ROBERT W. BINGHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8823.   Promulgated October 8, 1927.

The petitioner regularly reported his income on the basis of cash received and disbursed. Various companies of which he was an ordinary stockholder declared dividends payable either on December 30 or 31, 1922, and mailed dividend checks to him on those days. He was unable to receive these checks in the ordinary and usual course of business until 1923 and was not required by the provisions of section 201(e) of the Revenue Act of 1921 to report the amount of the dividends as part of his income for the calendar year 1922.

*John D. Watkins, Esq.*, for the petitioner.
*Joseph K. Moyer, Esq.*, for the respondent.

11340°—28——41

This is a proceeding for the redetermination of a deficiency in income taxes for the year 1922 in the amount of $8,988.53. The Commissioner included certain dividends in the petitioner's gross income for the year 1922. The petitioner claims that this was an error in that he reported his income on the basis of cash receipts and disbursements and did not receive the dividends until 1923. Most of the facts were stipulated.

FINDINGS OF FACT.

The petitioner is an individual who has an office and a residence in Louisville, Ky.

During the years 1920, 1921, 1922, and 1923 he kept a set of books showing his cash receipts and disbursements over the calendar year periods, and made returns of income for the same years upon the cash receipts and disbursements basis. This method of accounting and rendering returns was used consistently by him and was accepted by the Commissioner, and the petitioner's tax liability for these years was determined in accordance therewith.

On January 2, 1923, the petitioner received from companies of which he was a stockholder dividend checks for the aggregate amount of $62,524.01. These checks were drawn on December 30 and 31, 1922, in payment of dividends declared during 1922 and payable on or about December 31, 1922, and were mailed from the offices of the companies on December 30 and 31, 1922, but were not received by the petitioner during the calendar year 1922.

The receipt of the dividends is shown on the petitioner's books as follows:

| Name of company | Received | Check dated | Amount |
|---|---|---|---|
| N. Y. Transit | January 2, 1923 | December 30, 1922 | $32,000.00 |
| Illinois Pipe Line | January 2, 1923 | December 30, 1922 | 1,600.00 |
| S. O. of Ky | January 2, 1923 | December 30, 1922 | 23,981.25 |
| Inland Waterways Co | January 2, 1923 | December 30, 1922 | 733.56 |
| Henry Clay Fire Ins. Co | January 2, 1923 | December 31, 1922 | 7.20 |
| Ohio Oil Co | January 2, 1923 | December 30, 1922 | 3,000.00 |
| Galens-Signal Oil Co | January 2, 1923 | December 30, 1922 | 400.00 |
| S. W. Penn. Pipe Lines | January 2, 1923 | December 31, 1922 | 800.00 |
| Prov. Loan Association | January 2, 1923 | December 31, 1922 | 2.00 |
| Total | | | 62,524.01 |

The petitioner reported these dividends in his return of income for the calendar year 1923, and paid the tax thereon. The respondent has held that the dividends were part of the petitioner's income for the calendar year 1922, and determined the tax accordingly.

The petitioner was not an officer or director of, and did not have a majority or controlling interest in any of the companies which

paid these dividends. He did not have a running or open account with any of them and did not owe any debts to any of the companies, but his relation with each of the companies was that of an ordinary minority stockholder.

### OPINION.

MURDOCK: The question involved in this appeal is whether the petitioner, making his return on the cash receipts and disbursements basis, should report in 1923, as taxable income for that year, the sum of $62,524.01, representing dividend checks mailed to him in December, 1922, and payable in 1922, but not physically received by him until 1923.

The petitioner contends that the amount in question is income for 1923, since that is the year in which he received it, and since he kept his books on the cash receipts and disbursements basis.

The respondent has taken the position that the amount in controversy should have been reported as income for 1922, because of section 201(e) of the Revenue Act of 1921, which reads as follows:

SEC. 201. (e) For the purposes of this Act, a taxable distribution made by a corporation to its shareholders or members shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands.

The respondent contends that as to this petitioner the dividends were unqualifiedly made subject to his demands not later than the dates when they were payable.

The Ways and Means Committee's Report, No. 350, 67th Congress, 1st Session, at page 9 refers to this subsection as follows:

It further clarifies a minor obscurity in the present law by providing that a distribution made by a corporation to its shareholders shall be included in the gross income of the latter as of the date when the cash or other property is unqualifiedly made subject to their demands.

The Finance Committee of the Senate in its report, No. 275, 67th Congress, at page 10, stated in regard to this subsection—

Minor obscurities in the present law have been clarified by stating conclusively certain provisions which heretofore have been stated in presumptions. It is further provided that a taxable distribution shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands, which is in accord with the decisions of the Courts and is well established in departmental practice.

The Commissioner's Regulations 45 related to the Revenue Act of 1918 and contains article 54, entitled "Examples of constructive receipt," which reads in part as follows:.

Where interest coupons have matured, but have not been cashed, such interest payment, though not collected when due and payable, is nevertheless available

to the taxpayer and should therefore be included in his gross income for the year during which the coupons matured. * * * Dividends on corporate stock are subject to tax when set apart for the stockholder, although not yet collected by him. See section 201 of the statute and articles 1541–1549. * * *

Article 1541 referred to is entitled "Dividends" and purports to be a definition. It reads in part as follows:

The mere declaration of a dividend is not a distribution. Dividends are income and are taxed at the rates for the year in which paid, regardless of when the earnings or profits out of which they were paid were accumulated.

Section 213 of the Revenue Act of 1921 defines gross income and contains the following sentence:

The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period; * * *

Section 212(b) of the 1921 Act provides:

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer * * *.

Even in the light of the above reports, of the portions of the regulations quoted, and of the decisions of the courts which have come to our attention, several different meanings can be deduced from a consideration of the pertinent provisions of the entire Act.

Up to the time of the passage of this Act it had been generally recognized that the cash receipts and disbursements method of reporting income was a proper method under the revenue acts. Any other method of accounting regularly employed by a taxpayer which clearly reflected the income of the taxpayer was also recognized as a proper one for the purpose of the income-tax return. The revenue acts, the decisions of the courts, and the decisions of this Board have consistently required that the method of reporting income should clearly reflect income for the period reported.

If Congress intended to provide by the passage of section 201(e) that dividends should be reported only in the year when payable, as contended by the respondent, it would in effect have abolished the requirement that income of the period should be clearly reflected in the method of reporting it. This is true because the section is general in its application and if "unqualifiedly subject to their demands" means payable, it requires one on the cash receipts and disbursements basis to report his income from dividends when they are payable but not received, and just as surely requires one using a form of the so-called accrual method to refrain from accruing his income from dividends until the year in which they are payable. In

each case there would be a distortion of income if judged by the previously well-recognized principles of correctly reporting income. See *Dodge & Bloomer* v. *United States* (Court of Claims, decided April 4, 1927).

In this connection see also the case of *Archer Maynard Campbell* v. *Commissioner*, 6 B. T. A. 60. The question involved was whether a dividend declared by a corporation in December, 1922, payable January 1, 1923, was income to the petitioner, a stockholder, for the calendar year 1922 or 1923. The Board held that the dividend was income for the year 1922 and said:

> Petitioner consistently kept his books and rendered his returns upon the accrual basis. When the directors of the Glamorgan Pipe & Foundry Co., of which he was chairman, by appropriate resolution in December, 1922, declared the cash dividend, petitioner accrued his proportion thereof upon his books as income and reported the same in his income-tax return for the year 1922. It is not claimed by the Commissioner and there is nothing to indicate that the method of accounting employed by petitioner in keeping his books of account, in accordance with which his return was filed, did not clearly reflect his income. We therefore approve the petitioner's treatment of the dividend as income in 1922.

If Congress intended " unqualifiedly subject to their demands " to be synonymous with " payable " and that section 201(e) should apply to all dividends no matter by what method the distributee regularly reported his income, then the above decision is wrong.

In the case of *Archer L. Kent* v. *Commissioner*, 6 B. T. A. 614, the Board held that the petitioner should report as income for 1923, dividends declared and payable in 1923, but not received by him until 1924. In that case, however, the parties expressly stipulated that " of the total dividends declared, the amount of $7,464.79 was payable on December 31, 1923, and *was unqualifiedly subject to the taxpayer's demand on that date.*" Because of this stipulation this latter case has no effect on the ruling in the earlier *Campbell* case.

Neither the two regulations of the Commissioner, nor the Act itself mentions the word " payable " and we do not believe that Congress intended any such dogmatic, narrow construction as this to be placed upon these words. The two regulations of the Commissioner are worded differently. One says dividends " are subject to tax when *set apart* for the stockholder, although not yet collected by him." The other says " dividends are income and are taxed at the rates for the year in which *paid.*" A dividend is not paid when the check for it is placed in the mail unless the distributee has authorized such method of payment, *Thairlwall* v. *Great Northern Railway Co.*, 2 K. B. 509 (1910), and yet the money may have been set apart for the stockholder. If Congress intended to clear up this minor obscurity by enacting section 201(e) as a definition of constructive receipt of dividends we can readily understand the

reference to this section in section 213. It should then be applied generally wherever receipt is material in reporting income from dividends. One reporting on the cash receipts basis who had in his hand a coupon due in December, is required by regulations to report the money to be received from it as income of that year even though he does not cash it until the following year. Similarly, one who can receive his dividends in December, should not be allowed to turn his back on them until the following year.

Let us examine section 201 (e) with this possible intent in mind. " Unqualifiedly " means absolutely and completely, without any qualification and not restricted by any reservation. When the day for payment arrives the dividend is subject to the demand of the stockholder (see Cook on Corporations, 8th Ed., vol. II, §§ 541 et seq. and cases there cited), but is it unqualifiedly so ?

After a dividend has been declared the directors of a corporation have the power to fix the place, manner, and means of payment with only such limitations as reason and good faith with the stockholders may require. *Richter & Co.* v. *Light,* 97 Conn. 364; 116 Atl. 600; *Hyams* v. *Old Dominion Copper Mining & Smelting Co.,* 82 N. J. Eq. 507; 89 Atl. 37 (affd. 83 N. J. Eq. 705; 92 Atl. 588); *Thairlwall* v. *Great Northern Railway Co., supra.*

In the *Thairlwall* case, which has been cited with approval by courts in this country, the question was whether the mailing of a dividend check constituted payment of the dividend. Lord Coleridge, J., in his opinion wrote:

The next point is whether the posting of the warrant to the registered address was payment. To establish this it is necessary to prove either a request to pay by such means or an agreement that payment shall be thus made. Where there has been such a request payment is made by proof of posting although the cheque never is received, being stolen in transit: (*Norman* v. *Ricketts, sup.*)  *  *  *  Whether it was within their [directors'] power to declare the mode of payment seems to me a question which can only be answered in the affirmative.

If they decide to mail every stockholder a check on the day the dividend is payable, as is done by most corporations, is this unreasonable? The petitioner in this case was a stockholder in many widely separated corporations. What could he do to prevent each of them from sending him a check instead of paying him the cash on the 30th or 31st of December? If he could not have gotten all of his cash on that day how can we say that it was unqualifiedly subject to his demand? It may be that if he had gone to any one of these corporations on December 31st and had demanded his dividend, he could have gotten it. But it is just as probable and reasonable to believe that the corporation would have told him that checks were being mailed and no exceptions would be made. Would not his

demand have been subject to this reasonable restriction? And in any event he could not have been in nine widely separated places on the same day.

In the present case we have an individual taxpayer who consistently reported and computed his income on the cash receipts and disbursements basis, which was the method of accounting regularly employed in keeping his books, who was an ordinary stockholder in widely separated corporations, and who made no effort to report his income in any other than the regular and reasonable way. In his system of reporting income the date of receipt was material and we think that the words of section 201(e) mean that he must report these dividends in the year 1923, when for the first time he could have gotten his money if he had wanted it, or, in other words, as of the day when in the ordinary and regular course of business he should have received the dividends. He did exactly as the Act required.

Reviewed by the Board.

> Judgment will be entered in accordance with the foregoing opinion after notice of 20 days, under Rule 50.

MARQUETTE, MORRIS, ARUNDELL, VAN FOSSAN, and SIEFKIN dissent.

LOVE, dissenting: I can not agree with the opinion or decision in the foregoing proceeding. I feel myself bound by the explicit terms and conditions of the statute. The statute lays down an unambiguous mandate and a judicial tribunal is transcending its prerogative to construe it into the discard.

In the instant proceeding the respective corporations in which petitioner owned stock declared dividends in 1922 and checks were issued by these corporations and mailed to the petitioner in 1922, and these checks were payable in 1922 without any restrictions or limitations. That being true, it seems to me that only one interpretation can be given to the plain English of the statute, to wit, that the amount of the dividend was unqualifiedly made subject to the demand of the petitioner at the instant the dividend was declared.

Section 201(e) of the Revenue Act of 1921 prescribed:

For the purposes of this Act, a taxable distribution made by a corporation to its shareholders or members shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands.

The 1921 Revenue Act is the only income-tax act that contains that or any similar provision. At the time of the enactment of that statute, the accounting system of constructive receipt, as well as the system of cash receipts and disbursements, was well known and recognized.

Article 54 of the Commissioner's Regulations 45 was in force at the date of the enactment of the Revenue Act of 1921, and that article reads in part as follows:

Dividends on corporate stock are subject to tax when set apart for the stockholder, although not yet collected by him.

The Finance Committee of the Senate in its report No. 275, 67th Congress, at page 10, in discussing section 201 (e) states:

Minor obscurities in the present law have been clarified by stating conclusively certain provisions which heretofore have been stated in presumptions. It is further provided that a taxable distribution shall be included in the gross income of the distributees as of the date when the cash or other property is unqualifiedly made subject to their demands, which is in accord with the decisions of the courts *and is well established in departmental practice.*

The reference by that Committee to " departmental practice " unquestionably referred to article 54, of Regulations 45, quoted above.

It is a matter of common knowledge that in 1921, Congress, as well as the public in general, realized that rates of taxation would decrease with each successive act of Congress, and by the Act of that year surtaxes for the year 1922 were made less than for the year 1921. One does not have to draw heavily upon his imagination to perceive a plausible reason prompting Congress to incorporate subsection (e) of section 201 into the Act of 1921.

To construe section 201 (e) as it is construed in the prevailing opinion in the instant proceeding is to construe it completely into the discard. Under that construction it is absolutely superfluous in the statute, serving no purpose whatever. Without it, a taxpayer recipient of corporate dividends would report such income exactly as he is now authorized to report it by that decision and exactly as he reports all other income. I can not bring myself to believe that Congress put that subsection in the law void of a purpose and void of a meaning.

As a further indication that Congress had a purpose in view; and as an indication that corporate dividends should be reported with restrictions not applicable to other classes of income, section 213 (a) of the Revenue Act of 1921 (same Act) provides, after defining gross income, as follows:

\* \* \* The amount of all such items (*except as provided in subdivision (e) of section 201*) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be prop-erly accounted for as of a different period \* \* \* (Italics ours.)

The above-quoted section of the statute is a clean, clearcut declaration on the part of Congress that it did not intend that corporate dividend income should be absolutely controlled, in reporting same, by

the taxpayer's accounting method. All other income may be so reported, but dividends are expressly excepted from such control.

All other income was permitted to be returned in accordance with the taxpayer's method of accounting, but corporate dividend income was singled out, and restrictions prescribed relative thereto. That Congress had the right to so treat such income is not questioned; that it should be treated differently from other classes of income I believe is demanded as plainly as English language can express the mandate. I do not feel myself authorized to agree to a construction of that statute which completely nullifiies it and renders it absolutely meaningless and superfluous.

Whether or not the stockholder happens to be situated so he may immediately demand the dividend is not involved in the provisions of the statute. The dividend is made subject to his demand whether he makes the demand or not.

PHILLIPS : I concur in the dissenting opinion prepared by Mr. Love. I believe it is proper to observe further that the provisions of the Act do not make dividends taxable when declared but only when " cash or other property is unqualifiedly made subject to their [stockholders'] demands." The language is not equivalent to a declaration that dividends are taxable when declared or even when payable unless, in the latter case, the money or other property to be distributed is available. It would seem that the purpose of the regulation referred to in the Finance Committee report was to require that dividends should be reported in the year in which they became payable, if payment was available. Whether or not this was a proper interpretation of the Revenue Act of 1918, Congress appears to have intended to incorporate it into the 1921 Act, and to have done so in words which are not subject to the interpretation placed upon them in the prevailing opinion.