MARY MILLER BRAXTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 45436. Promulgated February 12, 1931.

*Millard T. Charlton, Esq.*, for the petitioner.
*Eugene Harpole, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The respondent determined a deficiency of $211.15 in petitioner's income tax for 1927, by adding to her income for that year $2,191.62 in corporate dividends declared and payable in 1927 and received by petitioner in 1928. The facts are submitted in the following stipulation:

1. The taxpayer is Mrs. Mary Miller Braxton, an individual, residing at " Eastwood," East Main Street, Staunton, Virginia.

2. The petitioner keeps her accounts and reports her income on a cash receipts and disbursements basis.

3. In the determination of the deficiency of $211.15 for the taxable year 1927, the Commissioner has increased the taxable income reported by the petitioner by the amount of $2,191.62 which is alleged to be the amount of an understatement of dividends received during the year 1927.

4. The amount of the dividends alleged by the Commissioner to be understated consists of two dividends received from the Dunedin Coal Company, Staunton, Virginia, in the amount of $300 and $50, respectively, and of a dividend in the amount of $1,841.62 received from the Erskine Company, Inc., Staunton, Virginia.

5. The dividend in the amount of $300 from the Dunedin Coal Company was received by the petitioner during the taxable year 1927 and was not reported as taxable income for that year.

6. Dividend check in the amount of $50 was drawn to the order of the petitioner by the Dunedin Coal Company, dated December 31, 1927, and mailed to her upon that date.

7. The dividend check of the Dunedin Coal Company in the amount of $50, dated December 31, 1927, was received in due course of the mail by the petitioner on January 2, 1928, and was not reported as taxable income for the year 1927.

8. Dividend check in the amount of $1,841.62 was drawn to the order of the petitioner by the Erskine Company, Inc., dated December 31, 1927, and mailed to her upon that date.

9. The dividend check of the Erskine Company, Inc., in the amount of $1,841.62, dated December 31, 1927, was received in due course of the mail by the petitioner on January 2, 1928, and was not reported as taxable income for the year 1927.

It also appears from the pleadings that respondent's determination was based upon his finding that " these dividends were declared by the corporation to be payable in the year 1927." Thus the question is whether a corporate dividend declared and payable in 1927, but received by the stockholder in 1928, is taxable to the stockholder in 1927.

The Revenue Act of 1926 governs. Unlike the Revenue Act of 1921, the 1926 Act contains no specific reference to dividends declared and payable in one year and actually received in another. But the history of the 1926 Act in this respect illuminates the interpretation which its general language requires.

Before the 1921 Act, it was an open question whether the Government was warranted in treating such dividends as constructively received on the day they became payable, notwithstanding the stockholder used the actual receipts method of computing his income and actually received the dividend check in the later year. The Revenue Act of 1921 expressly provided in section 201(e) that such a dividend was taxable to the stockholder when unqualifiedly subject to his demand. Whatever doubt may have existed as to the scope of this specific provision—cf. *Commissioner* v. *Bingham*, 35 Fed. (2d) 503, reversing 8 B. T. A. 603—was deliberately removed by Congress in the later act of 1924 and subsequent statutes, which have remained similar. It is unmistakable from the legislative reports that Congress intended, by the general language used, to include such dividends in the stockholders' gross incomes of the year payable.

The Treasury Department's statement of changes proposed in 1924 to be made in the 1921 Act, contains the following:

Subdivision (e) [of section 201] of the present law [1921 Act] is omitted in the draft [1924 Act]. This subdivision provided that a dividend should be included in the gross income of the stockholder as of the date when the cash was unqualifiedly made subject to his demands. This provision is only a specific instance of the general rule uniformly applied by the Department, as, for example, in the case of coupons on bonds.

The Ways and Means Committee Report of the House says:

Subdivision (e) [section 201] of the present law is omitted in this bill but is covered by a general provision in section 213(a) of the bill. * * * It is provided in section 213(a) that items of gross income shall be considered to be received in the taxable year in which they are unqualifiedly made subject to the demands of the taxpayer. This is a general provision which corresponds to the narrow provision of section 201(e) of the existing law and merely states in the statute the rule which would be followed without an express statutory provision.

The Finance Committee Report of the Senate repeats the statement as to the omission of section 201(e) and says as to section 213(a):

A new sentence has been added to the definition of gross income, providing that items of gross income shall be considered to be received in the taxable year in which they are unqualifiedly made subject to the taxpayer's demand. This is a statutory enactment of the rule followed by the department, as well as a more general application of a similar provision in section 201(e) of the existing law.

The bill was changed by striking this sentence and the Report of the Conference Committee contains the following:

Amendment No. 43: The House bill provided that items of gross income should be considered to be received in the taxable year in which they are unqualifiedly made subject to the demands of the taxpayer. This provision was designed to require dividends, bond interests, and salaries such as draw-

ing accounts, to be included in income when subject to demand by the taxpayer even though not actually received in cash by him. Since this is the rule which is and should be followed in such cases in the absence of a statutory provision, the Senate Amendment strikes out the provision; and the House recedes.

From these reports and the various stages of the bill, it is clear that the legislative intent was that gross income should continue to include the items covered by section 201 (e) of the 1921 Act, and that the general language of the statute was sufficient to express this intent. We think the language of the 1924 and 1926 Acts is entirely susceptible of this construction, or, to put it contrariwise, we think that the language used does not clearly exclude such items from gross income, and hence that the actual intention may properly be effectuated by the application of the general language to dividends, when subject to demand. These dividends were payable in 1927, and, as held generally in the *Bingham* case, *supra*, were, therefore, in the absence of evidence to the contrary, receivable by the stockholder on mere demand and hence constructively received.

*Cecil Q. Adams*, 20 B. T. A. 243, contained an important difference—the dividend was only payable by a check to be mailed December 31, and hence the stockholder had no right to demand payment otherwise before receipt by mail.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

BLACK, concurring: I concur in the result reached in the majority opinion, but I do not agree to the statement in the opinion wherein it is said:

*Cecil Q. Adams*, 20 B. T. A. 243, contained an important difference—the dividend was only payable by a check to be mailed December 31, and hence the stockholder had no right to demand payment otherwise before receipt by mail.

In my judgment there is no difference of substance between the facts in the *Cecil Q. Adams*, *supra*, proceeding and the facts in the instant case. I think *Cecil Q. Adams*, *supra*, is in conflict with *Commissioner* v. *Bingham*, 35 Fed. (2d) 503; certiorari denied by United States Supreme Court, March 12, 1930, and the following cases since then decided by this Board: *S. Livingston Mather*, 18 B. T. A. 1068, and *John Tod*, 19 B. T. A. 1027.

For the reason that I think *Cecil Q. Adams*, *supra*, is in conflict with the above decisions, I think it should be definitely overruled by this Board.

---

LANSDON, LOVE, and PHILLIPS dissent.

MURDOCK, dissenting: Although I agree that the case of *Cecil Q. Adams*, 20 B. T. A. 243, is not in point, I dissent for reasons set forth in *Robert W. Bingham*, 8 B. T. A. 603.